Karen ELLIOTT, Plaintiff,

v.

Michael G. DONAHUE, Defendant-Appellant,†

HERITAGE MUTUAL INSURANCE COMPANY,
Defendant-Respondent,

David M. MIKRUT, Michael G. McErlean, Allstate
Insurance Company and the Cincinnati Insurance
Company, Defendants.

Court of Appeals

*No. 90-2618. Submitted on briefs June 19, 1991.—Decided July
17, 1991.*

(Also reported in 473 N.W.2d 155.)

†Petition to review granted.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *David A. Hudec* of *Hudec Law Offices* of East Troy.

On behalf of defendant-respondent, the cause was submitted on the brief of *James W. Mohr, Jr.* of *Mohr & Ratzel, S.C.* of Hartford.

Before Nettesheim, P.J., Scott and Anderson, JJ.

ANDERSON, J.   Michael G. Donahue appeals from an order of the trial court denying his motion for payment from Heritage Mutual Insurance Company of attorney's fees that Donahue incurred in defending himself against claims filed by third parties and in contesting Heritage Mutual's denial of coverage. The trial court held that because Heritage Mutual acted promptly to contest coverage under its liability insurance policy it was not chargeable for actual attorney's fees, costs and

disbursements incurred by Donahue. We agree with the trial court that the "American rule" does not permit Donahue to recover actual attorney's fees incurred in successfully contesting Heritage's denial of coverage. However, because we conclude that when an insurer is contesting coverage its duty to defend its insured is not suspended, we hold that Donahue is entitled to recover his actual attorney's fees, costs and disbursements incurred in defending himself. We therefore affirm in part and reverse in part, remanding this cause to the trial court to determine the appropriate amount of attorney's fees, costs and disbursements to be awarded Donahue for that portion we allow.

Karen Elliott initiated this action against Donahue and the other defendants to recover for personal injuries suffered in an automobile accident.[1] The complaint alleged that at the time of the accident Donahue was insured under a liability policy issued by Heritage Mutual to his stepmother. Donahue tendered his defense to Heritage Mutual. Within three weeks of the commencement of the action, Heritage Mutual sent Donahue a letter in which it declined coverage on the grounds that Donahue was operating the car involved in the accident without the permission of the owner. Heritage Mutual advised Donahue that he should retain an attorney at his own expense.

Donahue did hire an attorney, who filed an answer on Donahue's behalf, filed cross-claims against other defendants and their insurers, and answered cross-claims that were filed against Donahue.

Heritage Mutual filed its own answer denying coverage. With notice to the other parties, Heritage Mutual

---

[1] The names and status of the other defendants as well as the facts and circumstances giving rise to the underlying action are not germane to this appeal.

moved the trial court to bifurcate the coverage issue from the liability and damage issues. Without objections the trial court scheduled the coverage issue for trial before the liability and damage issues. A jury returned a verdict finding that Donahue was operating the automobile with the permission of the owner and the trial court entered judgment finding that there was coverage under the Heritage Mutual policy. Heritage immediately assumed Donahue's defense, negotiated settlements of all pending claims and secured releases of all claims and cross-claims against Donahue.

Donahue filed motions after verdict seeking reimbursement of his actual attorney's fees, costs and disbursements incurred for: (1) defending against all claims in the underlying actions, and (2) contesting Heritage Mutual's denial of coverage.

The trial court's ruling—that Heritage Mutual was not liable to Donahue for his attorney's fees—involves a question of law only, which we review unconstrained by the trial court's decision. *See Professional Office Bldgs., Inc. v. Royal Indem. Co.,* 145 Wis. 2d 573, 580, 427 N.W.2d 427, 429 (Ct. App. 1988).

I.

Donahue first argues that he is entitled to actual attorney's fees, costs and disbursements incurred in defending the liability and damage portion of this case. His position is that even though Heritage was contesting coverage it had a duty to provide him with a defense until the question of coverage was decided. Donahue points out that he retained counsel at Heritage Mutual's direction and under the terms of the insurance policy Heritage Mutual is required to pay reasonable expenses

incurred at its request.[2]

In response Heritage Mutual contends that because it followed the procedure sanctioned in *Mowry v. Badger State Mut. Casualty Co.*, 129 Wis. 2d 496, 385 N.W.2d 171 (1986), it cannot be held liable for any of Donahue's attorney's fees, costs and disbursements.

We agree that Heritage Mutual did scrupulously conform to the procedure suggested in *Mowry* when an insurer desires to contest coverage under the terms of the policy. Immediately upon tender of the defense Heritage Mutual completed its investigation and advised Donahue that it declined to provide coverage and that he should retain his own counsel. Heritage Mutual also filed an answer on its own behalf denying coverage. Heritage Mutual secured the agreement of the other parties and the trial court to bifurcate the coverage issue from the liability and damage issues. After the jury returned a verdict finding coverage, Heritage Mutual immediately assumed the defense of Donahue and negotiated settlement of all claims against its insured.

However, we disagree with Heritage Mutual that following the *Mowry* procedure insulates it from liability for Donahue's attorney's fees incurred for defending the underlying action. In *Mowry* the supreme court noted

---

[2]The relevant part of the insurance policy reads:

PART I—LIABILITY

Additional Payments

As respects an insured person, we will pay, in addition to our limit of liability:

1.  All costs we incur in the settlement of a claim or defense of a suit.

. . ..

7.  Any other reasonable expenses incurred at our request.

that on occasion an insurer can be required to furnish a free defense to its insured pending the determination of coverage. *Id.* at 528–29, 385 N.W.2d at 186. In Wisconsin the duty of an insurer to provide a defense to its insured is determined by the complaint and not by extrinsic evidence. *Smith v. State Farm Fire & Casualty Co.,* 127 Wis. 2d 298, 299, 380 N.W.2d 372, 373 (Ct. App. 1985). Once Heritage Mutual received notice of the lawsuit and a copy of the complaint alleging facts that if proven would give rise to liability covered under the policy, it was required to provide a defense to Donahue. *Sola Basic Indus., Inc. v. United States Fidelity & Guar. Co.,* 90 Wis. 2d 641, 646, 280 N.W.2d 211, 213 (1979).

█ The fact that Heritage Mutual acquires information outside of the complaint that leads it to believe that it has a policy defense does not absolve it of the duty to defend its insured while the coverage question is pending. "The duty to defend is a contractual obligation of the insurer in line with the insured's reasonable expectation of protection." *Barber v. Nylund,* 158 Wis. 2d 192, 196, 461 N.W.2d 809, 811 (Ct. App. 1990). This duty to defend is not suspended pending the resolution of the coverage issue. *Id.* at 198, 461 N.W.2d at 812.

In *Barber,* the insured was not left to fend for himself on the action for damages; the insurer filed an answer on the insured's behalf denying his negligence as well as alleging affirmative defenses. *Id.* The insurer then promptly obtained a hearing on the coverage issue prior to any proceedings on the claim for liability and damages. *See id.* at 199, 461 N.W.2d at 812. This case is distinguishable from *Barber* because here Donahue was left to defend himself because Heritage Mutual declined to file an answer on his behalf.

It is not unduly burdensome to require an insurer to undertake the defense of an insured where the complaint contains facts that would give rise to liability even if the insurer has a legitimate question about whether there is coverage. *See Mowry,* 129 Wis. 2d at 524, 385 N.W.2d at 184. True, this might require an insurer to expend funds on attorney's fees to defend an insured who subsequently may be found not to be entitled to coverage. But insurance policies are written on a risk basis, *see Allstate Ins. Co. v. Charneski,* 16 Wis. 2d 325, 331, 114 N.W.2d 489, 493 (1962); the statutes provide an insurer with several methods of reducing the cost of defense until the coverage issue is resolved;[3] and under a liability policy an insurer can control defense costs by retaining counsel at a fee it negotiates rather than directing the insured to retain counsel at the local market rate.[4] *Cf. Patrick v.*

---

[3]Section 803.04(2)(b), Stats., permits bifurcation of the issues or the insurer can seek a declaratory judgment on the issue of coverage under sec. 806.04, Stats. If separate trials are granted the insurer can seek early resolution of the question through a motion for judgment on the pleadings, sec. 802.06(3), Stats., or summary judgment, sec. 802.08, Stats. Section 802.10, Stats., enables the insurer to obtain an accelerated schedule on the coverage issue. And, under secs. 804.01(3) and (4), Stats., the insurer can obtain orders limiting discovery to the coverage issue and staying discovery on the liability and damage issues.

[4]Trial courts have long been encouraged to bifurcate the coverage issue and the liability and damage issues. *See Allstate Ins. Co. v. Charneski,* 16 Wis. 2d 325, 331, 114 N.W.2d 489, 492–93 (1962). The trial courts should be responsive to motions to bifurcate and motions designed to control legal expenses pending resolution of the coverage question. We are mindful of the oppressive workload in the trial courts, but the expeditious resolution of insurance coverage questions can simplify the remaining issues and conceivably the settlement of the liability and damage questions can be achieved after coverage is determined.

*Head of the Lakes Coop. Elec. Ass'n,* 98 Wis. 2d 66, 72–73, 295 N.W.2d 205, 209 (Ct. App. 1980).

We have examined the allegations in Elliott's complaint filed against Donahue. On its face, the complaint alleges sufficient facts that if proven would obligate Heritage Mutual to defend Donahue. The legal principles we have discussed require Heritage Mutual to defend Donahue at the same time it contested coverage. Rather than assume Donahue's defense, Heritage Mutual instructed Donahue to retain counsel and conduct his own defense. Even though Heritage Mutual sought immediate resolution of the coverage issue, it remained liable for Donahue's expenses in defending himself while the coverage issue was pending.

Under the terms of the policy Heritage Mutual is obliged to reimburse Donahue for all reasonable expenses incurred at its request. On remand the trial court shall determine the reasonable attorney's fees, costs and disbursements incurred by Donahue in defending himself on the liability and damage issues.

## II.

Donahue also argues that because Heritage Mutual breached its contractual duty to provide him with a defense he is entitled to reimbursement of actual attorney's fees, costs and disbursements incurred in securing coverage under the terms of the policy.

Heritage Mutual argues that Donahue is not entitled to his expenses because he never filed a cross-claim for coverage until after the trial and the "American rule" bars a successful litigant's recovery of expenses. Donahue's failure to formally file a coverage claim is of no consequence for two reasons. First, Elliott's complaint

alleging coverage and Heritage Mutual's denial were sufficient to put coverage in issue and permit Donahue to participate in the coverage trial. Second, Donahue's claim that he was insured under Heritage Mutual's policy was tried with the implied consent of all the parties, and the late amendment of Donahue's pleading was done without any prejudice to Heritage Mutual. Section 802.09(2), Stats.

■ Although *Kremers-Urban Co. v. American Employers Ins. Co.,* 119 Wis. 2d 722, 351 N.W.2d 156 (1984), involves attorney's fees in a declaratory judgment action on coverage, we conclude that its holding that the "American rule" pertains to the awarding of actual costs in insurance coverage litigation is also applicable where coverage is decided in a bifurcated case.

Under the "American rule" each party bears its own costs of litigation; it is only when actual attorney's fees are authorized by contract or statute that the successful litigant can claim reimbursement. In this case there is no independent authority—contract or statutory—for Donahue to recover his expenses in securing coverage. Under the "American rule" he cannot recover his actual expenses just because he was successful.

■ Based upon its independent investigation, Heritage Mutual registered a fairly debatable denial of coverage and promptly sought judicial resolution of its position under the procedure sanctioned in *Mowry.* Therefore, Donahue cannot claim that Heritage Mutual has acted in bad faith or that its denial of coverage was unjustified. *See Mowry,* 129 Wis. 2d at 526, 385 N.W.2d at 185.

■ We conclude that Donahue is not entitled to his actual attorney's fees, costs or disbursements incurred in

seeking coverage under Heritage Mutual's liability policy. Likewise he is not entitled to actual attorney's fees, disbursements or costs incurred in pursuing the claim for expenses that is the subject of this appeal. Heritage Mutual had a duty to provide a defense to Donahue until the coverage issue was determined. Donahue's action against Heritage is on the insurance policy and for the fees he incurred in defending himself up to the time that Heritage Mutual extended coverage. The "American rule" prohibits Donahue from obtaining reimbursement for actual expenses that have accrued in pursuit of attorney's fees incurred in doing what Heritage Mutual should have done.[5] *See Patrick,* 98 Wis. 2d at 72, 295 N.W.2d at 208.

*By the Court.*—Order affirmed in part, reversed in part and cause remanded with directions.

---

[5]Heritage Mutual has requested that we declare Donahue's appeal to be frivolous. Our resolution of this appeal makes it unnecessary to consider this request.